IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS

Vortex, Inc.,

Plaintiff(s),

v.

KryptoKollectibles, et al,

Defendant(s).

Case No. 22 C 4189
Judge Gary Feinerman

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $       ,

which ☐ includes       pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

☐ in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

☒ other: : Judgment is entered in favor of Plaintiff Vortex, Inc., and against Defendants KryptoKollectibles, et al., in the amount of $200,000.00 per Defendant.  Injunctive relief issues as well.

This action was *(check one)*:

☐ tried by a jury with Judge       presiding, and the jury has rendered a verdict.
☐ tried by Judge       without a jury and the above decision was reached.
☒ decided by Judge Gary Feinerman on a motion.

Date: 12/14/2022

Thomas G. Bruton, Clerk of Court

/s/ Jackie Deanes , Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VORTEX, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> *Defendants*. | Case No.: 1:22-cv-04189 <br><br> The Honorable Gary Feinerman |

## FINAL JUDGMENT ORDER

This action having been commenced by Plaintiff Vortex, Inc. against the ("Plaintiff" or "Vortex") against the fully interactive, e-commerce stores operating under the seller aliases identified on Schedule A to the Complaint and attached hereto (collectively, the "Seller Aliases"), and Vortex having moved for entry of Default and Default Judgment against the Seller Aliases identified on Schedule A attached hereto (collectively, the "Defaulting Defendants");

This Court having entered upon a showing by Vortex a temporary restraining order and preliminary injunction against Defaulting Defendants which included an asset restraining order;

Vortex having properly completed service of process on Defaulting Defendants, the combination of providing notice via electronic publication and e-mail, along with any notice that Defaulting Defendants received from payment processors, being notice reasonably calculated under all circumstances to apprise Defaulting Defendants of the pendency of the action and affording them the opportunity to answer and present their objections; and Defaulting Defendants

having failed to answer the Complaint or otherwise plead, and the time for answering the Complaint having expired;

THIS COURT HEREBY FINDS that it has personal jurisdiction over Defaulting Defendants since Defaulting Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing infringing and/or counterfeit versions of Vortex-trademarked and copyrighted products related to *The Texas Chainsaw Massacre* films (the "TCM films') or bearing THE TEXAS CHAINSAW MASSACRE or associated trademarks or copyrights (the "TCM Merchandise") (the TCM Films and TCM Merchandise together are the "TCM Products"). The Vortex trademarks and copyrights are defined as follows:

| Mark and Reg. No. | Registration Date | Goods and Services |
|---|---|---|
| TEXAS CHAINSAW<br><br>**Reg** 5108757 | 27-DEC-2016 | **Int. Cl. 9:** prerecorded digital video disks featuring motion pictures in the genre of horror |
| TEXAS CHAINSAW<br><br>**Reg** 5108759 | 27-DEC-2016 | **Int. Cl. 16:** posters |
| THE TEXAS CHAINSAW MASSACRE<br>**Reg** 6486041 | 14-SEP-2021 | **Int. Cl. 28:** action figures; toy vehicles; play sets for action figures; toy action figures; toy action figures and accessories therefor |
| THE TEXAS CHAINSAW MASSACRE | 31-AUG-2021 | **Int. Cl. 21:** bowls; plates; shot glasses; coffee cups, tea cups and mugs; drinking glasses |

3

| Mark and Reg. No. | Registration Date | Goods and Services |
|---|---|---|
| Reg 6470809 | | |
| THE TEXAS CHAINSAW MASSACRE <br> Reg 6256277 | 26-JAN-2021 | **Int. Cl. 9:** cases for smartphones; cases for mobile phones; protective cases for smartphones; protective covers and cases for cell phones, laptops and portable media players; waterproof cases for smart phones |
| THE TEXAS CHAINSAW MASSACRE <br> Reg 6450672 | 10-AUG-2021 | **Int. Cl. 18:** all purpose sports bags; backpacks; beach bags; beach bags; billfolds; book bags; bum bags; cases for keys; clutch bags; coin purses; cosmetic bags sold empty; cosmetic carrying cases sold empty; duffel bags; grooming organizers for travel; gym bags; handbags; knap sacks; knapsacks; overnight bags; pocketbooks; purses and wallets; roll bags; satchels; school bags; school knapsacks; school satchels; schoolbags; shaving bags sold empty; shoulder bags; sports bags; suitcases; toiletry cases sold empty; tote bags; wallets; wallets made of leather or other materials |
| THE TEXAS CHAINSAW MASSACRE <br> Reg 6274074 | 16-FEB-2021 | **Int. Cl. 16:** bumper stickers; comic books; erasers; graphic novels; pencils; pens; postcards and greeting cards; posters; stickers |
| THE TEXAS CHAINSAW MASSACRE <br> Reg 6165896 | 29-SEP-2020 | **Int. Cl. 14:** jewelry |
| THE TEXAS CHAINSAW MASSACRE | 17-NOV-2020 | **Int. Cl. 26:** hair pins; ornamental adhesive patches for jackets; ornamental novelty buttons; ornamental |

AFDOCS:26658740.2

| Mark and Reg. No. | Registration Date | Goods and Services |
|---|---|---|
| **Reg** 6201534 | | novelty pins |
| THE TEXAS CHAINSAW MASSACRE **Reg** 6143308 | 01-SEP-2020 | **Int. Cl. 21:** beer mugs; bowls; coffee cups, tea cups and mugs; coffee mugs; cups; mugs; plates; salt shakers; shot glasses |
| THE TEXAS CHAINSAW MASSACRE **Reg** 6329556 | 20-APR-2021 | **Int. Cl. 18:** back packs; billfolds; handbags; knapsacks; purses; satchels; schoolbags; tote bags; wallets |
| THE TEXAS CHAINSAW MASSACRE **Reg** 6031011 | 07-APR-2020 | **Int. Cl. 41:** entertainment services in the nature of an amusement park attraction, namely, a themed area |
| THE TEXAS CHAINSAW MASSACRE **Reg** 5954392 | 07-JAN-2020 | **Int. Cl. 25:** hats |
| THE TEXAS CHAINSAW MASSACRE **Reg** 5949916 | 31-DEC-2019 | **Int. Cl. 14:** jewelry; costume jewelry |
| THE TEXAS CHAINSAW MASSACRE **Reg** 3911258 | 25-JAN-2011 | **Int. Cl. 9:** prerecorded digital video disks featuring motion pictures in the genre of horror films; prerecorded video cassettes featuring motion pictures in the genre of horror films |
| THE TEXAS CHAINSAW MASSACRE **Reg** 3911259 | 25-JAN-2011 | **Int. Cl. 18:** card wallets; coin holders in the nature of wallets; pocket wallets; wallet chains; wallets; wallets and wallet inserts; wallets with card compartments |

5

| Mark and Reg. No. | Registration Date | Goods and Services |
|---|---|---|
| THE TEXAS CHAINSAW MASSACRE **Reg** 3911256 | 25-JAN-2011 | **Int. Cl. 28:** playing cards; toy action figures |
| THE TEXAS CHAINSAW MASSACRE **Reg** 3863617 | 19-OCT-2010 | **Int. Cl. 25:** halloween costumes and masks sold in connection therewith; masquerade costumes and masks sold in connection therewith; short-sleeved or long-sleeved t-shirts |
| THE TEXAS CHAINSAW MASSACRE **Reg** 3755545 | 02-MAR-2010 | **Int. Cl. 16:** [ calendars; ] comic books; graphic novels;[ pen and pencil cases; pens; ] picture postcards; postcards and greeting cards; posters |
| *Design Only*  **Reg** 6549307 | 02-NOV-2021 | **Int. Cl. 16:** posters; stickers |
| LEATHERFACE **Reg** 6143297 | 01-SEP-2020 | **Int. Cl. 26:** belt buckles; cellular phone accessory charms; decorative backpack charms; decorative charms for cellular telephones; laces for footwear; ornamental novelty badges; ornamental novelty pins; purse charms |

5

| Mark and Reg. No. | Registration Date | Goods and Services |
|---|---|---|
| LEATHERFACE<br><br>Reg 6143309 | 01-SEP-2020 | **Int. Cl. 21:** bowls; cups; mugs; plates; salt shakers; salt and pepper shakers; shot glasses; beer mugs; coffee mugs; coffee cups, tea cups and mugs |
| LEATHERFACE<br><br>Reg 5949947 | 31-DEC-2019 | **Int. Cl. 14:** jewelry; costume jewelry |
| LEATHERFACE<br><br>Reg 4006648 | 02-AUG-2011 | **Int. Cl. 28:** toy cars, toy vehicles and accessories therefor, toy weapons, all of the foregoing being promoted in connection with a popular fictional motion picture character |
| LEATHERFACE<br><br>Reg 3868263 | 26-OCT-2010 | **Int. Cl. 26:** belt buckles being promoted in connection with a popular fictional motion picture character |
| LEATHERFACE<br><br>Reg 3833527 | 17-AUG-2010 | **Int. Cl. 25:** tee shirts promoted in connection with a popular fictional motion picture character |

| Full Title | Copyright Number | Year |
|---|---|---|
| Massacre a la tronconneuse | PA0001982055 | 2014 |
| Texas chainsaw massacre / by Tobe Hooper & Kim Henkel | RE0000914501 | 1974 |

THIS COURT FURTHER FINDS that Defaulting Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), willful copyright infringement (17 U.S.C. § 504), and false designation of origin (15 U.S.C. § 1125(a)).

IT IS HEREBY ORDERED that Vortex's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendants are deemed in default and that

6

this Final Judgment is entered against Defaulting Defendants.

IT IS FURTHER ORDERED that:

1. Defaulting Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from:

    a. using, advertising, marketing, manufacturing, shipping, or selling any TCM Product;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine TCM Product or any other product produced by Plaintiff, that is not Plaintiff's or is not produced under the authorization, control or supervision of Plaintiff and approved by Plaintiff for sale;

    c. committing any acts calculated to cause consumers to believe that Defaulting Defendants' products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing Plaintiff's trademarks or copyrights and damaging Plaintiff's goodwill;

    e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's trademarks or copyrights or any confusingly similar reproductions, counterfeit copies, or colorable imitations thereof;

    f. using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defaulting Defendant domain names, or any other

domain name or online marketplace account that is being used to sell or is the means by which Defaulting Defendants could continue to sell counterfeit or infringing TCM Products; and

  g. operating and/or hosting websites at the Defaulting Defendant domain names and any other domain names registered or operated by Defaulting Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiff's trademarks or copyrights or any confusingly similar reproduction, counterfeit copy or colorable imitation thereof that is not a genuine TCM Product or is not authorized by Plaintiff to be sold.

2. Upon Vortex's request, any third party with actual notice of this Order who is providing services for any of the Defaulting Defendants, or in connection with any of the Defaulting Defendants' Online Marketplaces, including, without limitation, any online marketplace platforms such as Alibaba, Aliexpress, and any related Alibaba entity (collectively, the "Alibaba Entities"), DHgate, and/or Wish (collectively, the "Third Party Providers") shall within ten (10) business days of receipt of this Order, disable and cease displaying any advertisements used by or associated with Defaulting Defendants in connection with the sale of counterfeit and infringing goods using the TCM Trademarks or Copyrights and provide confirmation to counsel for Plaintiff that such action has been completed within three (3) business days of completion.

3. Any remaining domain name registries for the Defaulting Defendant domain names including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, that have not already been disabled and turned over to Vortex, within five (5) business days of receipt of this Order, shall at Plaintiff's choosing and provide confirmation to counsel for Plaintiff that such action has been completed within three (3) business days of completion:

  a. unlock and change the registrar of record for the Defaulting Defendant domain

names to a registrar of Plaintiff's selection, and the domain name registrars shall take any steps necessary to transfer the Defaulting Defendant domain names to a registrar of Plaintiff's selection; or

      b.     disable the Defaulting Defendant domain names and make them inactive and not transferable.

4.     Those in privity with Defaulting Defendants and with actual notice of this Order, including, without limitation, any online marketplaces such as Wish, the Alibaba Entities, DHgate, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defaulting Defendant domain names, and domain name registrars, shall within five (5) business days of receipt of this Order and provide confirmation to counsel for Plaintiff that the following actions have been completed within three (3) business days of completion:

      a.     disable and cease providing services for any accounts through which Defaulting Defendants engage in the sale of counterfeit and infringing goods using the Vortex's trademarks or copyrights, including any accounts associated with the Defaulting Defendants listed in Schedule A;

      b.     disable and cease displaying any advertisements used by or associated with Defaulting Defendants in connection with the sale of counterfeit and infringing goods using Vortex's trademarks or copyrights; and take all steps necessary to prevent links to the Defaulting Defendant domain names identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant domain names from any search index.

5.     Pursuant to 15 U.S.C. § 1117(c)(2) and 17 U.S.C. § 504(c)(2), Vortex is awarded statutory damages from each of the Defaulting Defendants in the amount of two hundred thousand

9

dollars ($200,000), with one hundred fifty thousand dollars ($150,000) allocated for the willful use of the TCM Trademarks and fifty thousand dollars ($50,000) allocated for the willful use of the TCM Copyrights. The two hundred thousand-dollar ($200,000) award shall apply to each distinct Defaulting Defendant only once, even if they are listed under multiple different aliases in the Complaint and Schedule A.

6. Vortex shall have the ongoing authority to serve this Order on Defaulting Defendants and third parties via electronic publication or by e-mail delivery to the e-mail addresses Vortex used to serve the Temporary Restraining Order or Preliminary Injunction Order.

7. Any Third Party Providers holding funds for Defaulting Defendants, including Wish, the Alibaba Entities, Alipay, or DHgate, shall, within ten (10) business days of receipt of this Order, permanently restrain and enjoin any financial accounts connected to Defaulting Defendants' Seller Aliases from transferring or disposing of any funds, up to the above identified statutory damages award, or other of Defaulting Defendants' assets.

8. All monies, up to the above identified statutory damages award, in Defaulting Defendants' financial accounts, including monies held by Third Party Providers, such as PayPal, Alipay, Alibaba, Ant Financial, Wish, DHgate, and Amazon Pay, are hereby released to Vortex as partial payment of the above-identified damages, and Third Party Providers, including PayPal, Alipay, Alibaba, Ant Financial, Wish, and Amazon Pay, are ordered to unconditionally release to Vortex the amounts from Defaulting Defendants' financial accounts along with an accounting of all amounts released within ten (10) business days of receipt of this Order.

9. Until Vortex has recovered full payment of monies owed to it by all Defaulting Defendants, Vortex shall have the ongoing authority to serve this Order on Third Party Providers, including PayPal, Alipay, Alibaba, Ant Financial, Wish, DHgate, and Amazon Pay, in the event

that any new financial accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, Third Party Providers, including PayPal, Alipay, Alibaba, Ant Financial, Wish, DHgate, and Amazon Pay, shall within ten(10) business days:

  a. locate all accounts and funds connected to Defaulting Defendants' Seller Aliases and Online Marketplaces, including, but not limited to, any financial accounts connected to the information listed in Schedule A hereto and any e-mail addresses provided for Defaulting Defendants by third parties;

  b. restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defaulting Defendants' assets; and

  c. release all monies, up to the above identified statutory damages award, restrained in Defaulting Defendants' financial accounts to Vortex as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

10. The ten-thousand dollar ($10,000) surety bond posted by Vortex is hereby released to counsel for Vortex, ArentFox Schiff LLP. The Clerk of the Court is directed to return the surety bond previously deposited with the Clerk of the Court to ArentFox Schiff LLP as counsel for Vortex.

  IT IS SO ORDERED.

 Dated: December 13, 2022

_____
Hon. Gary Feinerman
United States District Judge