IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VORTEX, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 1:22-CV-04189 <br><br> Hon. Lindsay C. Jenkins |

**NON-PARTIES ALIPAY MS AND ALIPAY US'S OPPOSITION TO PLAINTIFF VORTEX'S MOTION FOR WRIT OF EXECUTION**

Non-parties Alipay Merchant Services Pte Ltd. ("Alipay MS") and Alipay US, Inc. ("Alipay US") submit this memorandum of law to oppose Plaintiff Vortex, Inc. ("Vortex")'s Motion for Writ of Execution (the "Motion" or "Mot.").[1]

**Preliminary Statement**

Vortex, a Texas corporation, brought this action against certain e-commerce merchants for their alleged infringement of Vortex's trademarks and copyrights relating to the movie *The Texas Chainsaw Massacre*. It obtained a default judgment against the defendants without facing any adversarial challenge to the merits of its claims. It now seeks to hale into this Court the non-parties Alipay MS, a Singapore company, and Alipay US, a California company, on the basis that Alipay MS maintains accounts for the defendants in Singapore containing funds that Alipay MS froze in respect of a TRO issued by this Court, but which Vortex has never established to be related to any of its claims in this case. Despite having been repeatedly advised that the proper procedure to

---

[1] Vortex directs this Motion to "Alipay" without specifying which Alipay entity it is targeting, despite having been informed that the funds are held by only Alipay MS in Singapore. Since Vortex has served this Motion on Alipay US and Alipay MS, this opposition is filed on behalf of Alipay US and Alipay MS.

1

enforce an Illinois default judgment against funds located in Singapore is to seek recognition and enforcement of its judgment in Singapore, in accordance with Singapore law, Vortex attempts to short-circuit that process by requesting this Court to ignore well-established principles of jurisdiction and international comity and order a non-party Singaporean corporation with no connection to Illinois to turn over funds it holds in Singapore to satisfy an Illinois judgment. Moreover, it seeks to do so by ignoring the applicable procedures for enforcing a judgment under the Federal Rules of Civil Procedure and Illinois law and invoking instead an Illinois state procedure—writ of execution—that was abolished in 1979.

## Background

I. **The Parties**

Plaintiff Vortex, Inc. ("Vortex") is a Texas corporation that owns trademarks and copyrights relating to the movie *The Texas Chainsaw Massacre* ("TCM"). Dkt. No. 1 ¶ 6. Vortex does not allege that it has any assets or business operations in Illinois. *See generally* Dkt. No. 1.

Defendants are e-commerce merchants that allegedly sold products bearing infringing or counterfeit trademarks related to TCM *Id.* ¶ 7. Defendants never appeared in this action to challenge the merits of Vortex's trademark and copyright infringement claims.

Non-party Alipay MS is a Singapore company headquartered in Singapore. Declaration of Ho Jia Ni, Elaine ("Ho Decl.") ¶ 3. Certain Defendants in the underlying action have accounts with Alipay MS in Singapore but Vortex has not established that the funds in those accounts were derived from the sale of infringing products in Illinois (or the U.S.) or have any connection to Vortex's claims in this case. *Id.* ¶ 7. Alipay MS does not have any business operations, assets, or bank accounts in Illinois. *Id.* ¶¶ 8–12.

Non-party Alipay US is a Delaware corporation headquartered in California. Declaration of Sandra Kister ("Kister Decl.") ¶ 3. Alipay US does not hold or control any restrained funds for

any of the Defendants and, therefore, is irrelevant to this enforcement proceeding targeting Defendants' assets located in Singapore. *Id.* ¶ 7.

Alipay MS and Alipay US do not own, operate or control the e-commerce platforms known as AliExpress.com or Alibaba.com. Ho Decl. ¶ 5; Kister Decl. ¶ 5. The payment application "Alipay" is not operated by Alipay MS or Alipay US. Ho Decl. ¶ 6; Kister Decl. ¶ 6.

II. **The Motion**

On August 9, 2022, Vortex brought an action against Defendants, which Vortex alleged were selling products that infringed its trademarks and copyrights relating to TCM. Dkt. No. 1 ¶¶ 6-7. The complaint did not name Alipay MS or Alipay US as defendants; nor did it allege any wrongdoing on their part. *See generally* Dkt. No. 1.

Vortex obtained an *ex parte* TRO (later extended) on August 18, 2022, Dkt Nos. 21, 26, and a preliminary injunction order on October 18, 2022, Dkt. No. 40. The orders direct third-party payment processors to freeze the funds in Defendants' accounts, among other things. *Id.* Vortex emailed the orders to Alipay MS. Alipay MS, in turn, notified Vortex that the accounts that it sought to restrain are located in Singapore and thus are outside this Court's jurisdiction. Declaration of Daniel Schwartz ("Schwartz Decl.") ¶¶ 2–3. Despite Alipay MS's jurisdictional objection, however, it offered to review Vortex's infringement claims and supporting evidence to decide whether to voluntarily freeze Defendants' funds in their Alipay MS accounts because it respects intellectual property rights. *Id.* ¶ 4. After reviewing Vortex's evidence, Alipay MS voluntarily froze the funds in the Alipay MS accounts of the relevant Defendants, while reserving its jurisdictional objections. *Id.* ¶ 5.

On November 17, 2022, Vortex moved for a default judgment against all Defendants because they failed to appear to defend this action. Dkt. No. 44. Defendants did not appear to oppose the motion, and the Court accordingly entered a default judgment. Dkt. No. 51.

3

To satisfy its default judgment, Vortex targets the funds frozen in the accounts held by Alipay MS in Singapore. Yet Vortex neither alleged in its complaint nor demonstrated nor obtained any judicial determination that Defendants' funds were in fact derived from sales of allegedly infringing products in Illinois, or even in the United States. The only basis that Vortex articulates in this Motion is that they belong to Defendants, while disregarding the well-established legal procedures for cross-border enforcement of judgments.

Alipay MS asserted its jurisdictional objections to Vortex's counsel on various occasions and referred Vortex to the governing procedures under Singapore law for recognition and enforcement of a non-Singaporean judgment. *See* Schwartz Decl. ¶¶ 9, 11. Nevertheless, Vortex refused to follow those procedures and instead filed this Motion on April 28, 2023.

III. **The Proper Procedure for Recognition and Enforcement of an Illinois Judgment in Singapore**

As detailed in the accompanying declaration of Singaporean law expert, Murali Pillai, SC, a creditor like Vortex seeking to enforce a non-Singaporean judgment against assets located in Singapore should follow Singapore's common law procedure to recognize and enforce such a judgment. Declaration of Murali Pillai ("Pillai Decl.") ¶¶ 22–36. Vortex's failure to comply with that procedure would expose Alipay MS to potential liability under Singaporean law. *Id.* ¶ 19.

<u>**Argument**</u>

I. **Vortex's Motion Fails To Comply With The Federal Rules And Illinois Law**

Vortex's Motion fails to comply with ***any*** of the procedural requirements under the Federal Rules of Civil Procedure and Illinois law. "Federal Rule of Civil Procedure Rule 69 instructs courts to apply state law in post-judgment proceedings." *Kelley v. Stevanovich*, 40 F. 4th 779, 782 (7th Cir. 2022). In Illinois, Section 2-1402 of the Illinois Code of Civil Procedure and Illinois Supreme Court Rule 277(a) govern post-judgment proceedings. *Dexia Credit Local v. Rogan*, 629

4

F.3d 612, 622 (7th Cir. 2010). Vortex purports to rely on Section 2-1402 as the basis for its Motion but fails to comply with any of its procedural requirements. Mot. at 13. For example, Section 2-1402 requires a judgment creditor to commence the proceeding by serving a citation issued by the clerk with special notice, 735 Ill. Comp. Stat. Ann. 5/2-1402(a), accompanied by an attorney or party certification, *Id.* 5//2-1402(b). Vortex did none of that.

Moreover, instead of complying with the proper procedures required by Section 2-1402, Vortex styles its motion as a "motion for writ of execution"—but Illinois abolished writs of execution over 40 years ago. *See* 735 Ill. Comp. Stat. Ann. 5/2-1501 ("**Writs abolished**. The function which was, prior to January 1, 1979, performed by a writ of execution to enforce a judgment … shall hereafter be performed by a copy of the order or judgment to be enforced, certified by the clerk of the court which entered the judgment or order.") (emphasis added).

In sum, the Motion should be denied because it completely ignores the procedural requirements under Rule 69 and Illinois law and relies instead upon an abolished Illinois procedure for enforcing judgments.

II.  **The Court Lacks Personal Jurisdiction Over Alipay MS**

In addition to being procedurally improper, the Motion should also be denied because Vortex fails to establish that this Court has personal jurisdiction over Alipay MS.

Vortex, as the party invoking jurisdiction, bears the burden of establishing that personal jurisdiction exists. *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). Therefore, Vortex "must establish a *prima facie* case of personal jurisdiction to survive dismissal," *id.*, and has an obligation to "submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Thus, this Court can exercise

personal jurisdiction if it would be permitted to do so under the Illinois long-arm statute.[2] Fed. R. Civ. P. 4(k)(1)(A); *uBID , Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "[I]n assessing the question of whether they may properly exercise jurisdiction over a nonparty," courts generally apply the same jurisdictional analysis used for civil defendants. *Gucci Am. Inc. v. Li*, 768 F.3d 122, 136-37 (2d Cir. 2014); *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 748 (N.D. Ill. 2016) ("courts have applied *Daimler* and earlier Supreme Court decisions addressing personal jurisdiction generally to cases involving third parties").

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017, 1024 (2021). Vortex establishes neither.

### A. Vortex Fails to Establish General Jurisdiction Over Alipay MS in Illinois

Vortex fails to establish general jurisdiction over Alipay MS in Illinois. General jurisdiction exists only "'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" *Kipp*, 783 F.3d at 697-98 (quoting *Daimler AG*, 571 U.S. at 122). Here, Alipay MS is not incorporated, nor does it have its principal place of business, in Illinois. Ho Decl. ¶ 3; *Daimler AG*, 571 U.S. at 137 ("the place of incorporation and principal place of business are paradigm bases for general jurisdiction") (internal citation and alterations omitted); *Leibovitch*, 188 F. Supp. 3d at 747 (declining to find general personal jurisdiction over non-party banks under *Daimler*). Indeed, Vortex does not even attempt to argue that general jurisdiction exists or allege any facts to demonstrate that Alipay MS's

---

[2] The Illinois long-arm statute permits courts to exercise personal jurisdiction for any reason permitted by the Illinois and United States Constitutions. 735 Ill. Comp. Stat. 5/2-209(c). Thus, the Seventh Circuit has stated that jurisdiction under the Illinois long-arm statute is apparently coextensive with the federal due process requirement. *RAR, Inc. v. Turner Diesel, Ltd.* , 107 F.3d 1272, 1276 (7th Cir. 1997).

affiliations with Illinois "are so continuous and systematic as to render [it] essentially at home" in Illinois. *Id.* at 746 (internal citation omitted).

      B.      **Vortex Fails to Establish Specific Jurisdiction Over Alipay MS in Illinois**

Vortex also fails to establish specific jurisdiction over Alipay MS in Illinois. Specific jurisdiction exists where suit-related conduct by a non-party creates a substantial connection with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The cornerstone of the specific jurisdiction analysis is whether a party has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

      1.      **Minimum Contacts**

The minimum contacts requirement asks the Court to analyze whether a non-party has "purposefully directed [its] activities at the forum state" and, assuming it has, whether the "alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Such contact with the forum "must be substantial enough to make it reasonable … to anticipate that [the non-party] could be haled into court there," and not be "'random, fortuitous, or attenuated.'" *Id*. at 492-93 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 464, (1985)).

Alipay MS does not have the requisite "minimum contacts" with Illinois. It does not maintain any business operations, assets, or bank accounts in Illinois. Ho Decl. ¶ 11. It does not operate or control e-commerce marketplaces such as AliExpress.com or Alibaba.com or any e-commerce stores or the Alipay mobile payment app. *Id.* ¶¶ 5–6. As such, it cannot be said that Alipay MS has "purposefully [availed] itself of the privilege of conducting activities within

[Illinois], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Vortex attempts to show minimum contacts through various means but all of them fail.

First, Vortex argues that personal jurisdiction exists because "Alipay acted as a contributory infringer by providing Defendants payment services." Mot. at 8. As a threshold matter, the issue of contributory infringement has nothing to do with personal jurisdiction. Vortex does not, and cannot, cite any authority holding that a party or non-party that is otherwise outside this Court's jurisdiction should be haled into this Court because it is allegedly a contributory infringer. Moreover, Vortex fails to allege anything (in either its pleadings in the underlying action or this Motion) to support its *ex cathedra* assertion that Alipay MS "acted as a contributory infringer." *Id.* And this Court never determined Alipay MS to be a contributory infringer. In all events, courts have rejected Vortex's unpled (and unadjudicated) theory of contributory infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 800 (9th Cir. 2007) (holding that payment processors cannot be held liable by virtue of their provision of payment processing service to copyright infringers); *Hart v. Amazon.com, Inc.*, 2015 WL 8489973, at *5 n.3 (N.D. Ill. Dec. 8, 2015) ("a claim that Amazon processed a sale of Vagabond Natural, even if it was aware of the infringement, is insufficient to support a claim for contributory infringement.").

Second, Vortex cites a news article for the proposition that "Alipay's contacts with the United States are extensive." Mot. at 8-9. Yet that article is about how the Alipay mobile application assists **Chinese consumers** to make purchases while travelling abroad and warned the readers that "only Chinese citizens can use the Alipay app to make payments outside of China." Kate Silver, *The new wave of global trade: How Alipay connects US businesses with Chinese*

8

*consumers*, https://www.protocol.com/sponsored-content/the-new-wave-of-global-trade-how-alipay-connects-us-businesses-with-chinese-consumers#toggle-gdpr (*last visited* June 15, 2023).

Third, Vortex argues that Alipay MS has minimum contacts with Illinois because it "must rely on U.S. payment services to transfer funds from consumers in the State of Illinois into Defendants' Alipay MS accounts … in Singapore" and that "the use of in-forum accounts by foreign entities has been held sufficient to establish that the foreign entity transacted business in the forum." Mot. at 10-12. But Alipay MS does not have any accounts in Illinois, let alone use such non-existent accounts to transfer payments for allegedly infringing products into Defendants' Alipay MS accounts. Ho Decl. ¶11. Thus, all of the authorities Vortex cites that find personal jurisdiction in New York based on a foreign party's use of payment service or correspondent accounts are clearly distinguishable. *See, e.g.*, *Sec. & Exch. Comm'n v. PlexCorps*, 2018 WL 4299983, at *16 (E.D.N.Y. Aug. 9, 2018) (defendants established, maintained and used accounts with Square, Strip, PayPal and Kraken to receive funds from their initial cryptocurrency offering); *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 338 (2012) (holding that "a foreign bank's repeated use of a correspondent account in New York on behalf of a client … show[s] purposeful availment of New York's … banking system"); *Gucci Am., Inc. v. Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (finding specific personal jurisdiction over the Bank of China, which opened a correspondent account with JPMorgan Chase Bank in New York to facilitate transfers directly from Chase customers to its customers); *Nike v. Wu*, 349 F. Supp. 3d 346, 358 (S.D.N.Y. 2018) (noting "four Banks ... ha[d] demonstrably used their New York-based correspondent accounts to facilitate U.S. dollar wire transfers abroad for Judgment Debtors).

Equally fatal to Vortex's argument is its failure to allege that its injuries "directly arise" out of Alipay MS's conduct in Illinois. Indeed, Alipay MS's only connection with this lawsuit is

that it holds funds for Defendants in accounts located in Singapore. Vortex does not demonstrate that those funds are derived from Illinois consumers who purchased allegedly infringing products from Defendants. *See, e.g.*, *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 132 (2d Cir. 2022) (finding no specific jurisdiction where the complaint did "not include a single allegation that any defendant used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, 2017 WL 3841874, at *5 (S.D.N.Y. Sept. 1, 2017) (no specific jurisdiction over bank where the Court was unaware of "any facts connecting ANZ Bank's New York branch office with the underlying facts of the case beyond the possibility that funds … *might* have passed through New York.").

2. **Principles of Fairness**

Even if Alipay MS had the requisite "minimum contacts" with Illinois, the exercise of personal jurisdiction would not comport with traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This inquiry requires the Court to consider (1) the burden on the non-parties, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining efficient resolution of the dispute, and (5) the shared interest of the states in furthering fundamental social policies. *Purdue Research*, 338 F.3d at 781. Since Alipay MS is a Singapore company, courts must consider "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987).

Each of these factors weighs against a finding of personal jurisdiction over Alipay MS. The burden on Alipay MS would be great. It is "headquartered thousands of miles from this Court," such that it is "unlikely that [it] would have envisioned that [its operations] would subject

10

[it] to [an enforcement action] in an Illinois lawsuit to which [it is] not a party." *Leibovitch*, 188 F. Supp. 3d at 755. Furthermore, as explained in detail in the Pillai Declaration, Alipay MS could face potential liability in Singapore if it complied with Vortex's request because Vortex has refused to follow the proper procedure in Singapore for the recognition and enforcement of a non-Singaporean judgment. Pillai Decl. ¶ 19.

Illinois has minimal interest in this dispute. Vortex is a Texas company, and Alipay MS is a Singapore company. *See Hot Wax, Inc. v. Stone Soap. Co.*, 1999 WL 183776, at *7 (N.D. Ill. Mar. 25, 1999) ("Illinois does not have a substantial interest in protecting the rights of companies located outside its borders."). Moreover, Vortex's citizenship in another forum means that its interest in litigating in this district is "diminished." *McGill v. Gigantex Techs. Co.*, No. 05C5892, 2005 WL 3436403, at *4 (N.D. Ill. Dec. 12, 2005).

In these circumstances, the exercise of personal jurisdiction over Alipay MS in this matter would not comport with "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

C. **Vortex's Attempts To Establish Personal Jurisdiction Fail**

Unable to establish general jurisdiction or specific jurisdiction under well-established Supreme Court and Seventh Circuit precedents, Vortex resorts to a kitchen-sink of arguments that have no basis in fact or law. *See generally* Mot. at 7-12.

For starters, Vortex suggests an alter ego theory that seeks to treat every single entity that touches on the Alipay payment application as one. It argues that "Alipay may not hide behind its web of corporate entities to avoid personal jurisdiction," which is effectively asking this Court to pierce the corporate veil. Mot. at 12. However, Vortex makes no effort to establish the elements required for veil-piercing. Nor can it carry "the burden of showing that the corporation is in fact a 'dummy or sham' for another person or entity." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008).

11

Next, Vortex attempts to argue waiver. It asserts that Alipay MS somehow waived the right to dispute personal jurisdiction because it "accepted service[,] … communicated with Vortex …, and complied with the Court's prior orders to freeze Defendants' accounts." Mot. at 7. This argument misrepresents the record. Indeed, Alipay MS explicitly and repeatedly reserved its personal jurisdiction objection when communicating with Vortex. *See* Schwartz Decl. ¶¶ 3, 4, 9, 10.

Vortex next implies that phone conversations between Alipay MS's counsel and Mr. Leung are sufficient to confer personal jurisdiction—a notion repeatedly rejected by courts in this Circuit. *See, e.g.*, *Tents, U.S.A., Inc. v. Circus Arts Found*, 1989 WL 57788, at *2 (N.D. Ill. Apr. 20, 1989) (no personal jurisdiction where "the nature of the defendant's contacts with Illinois during the negotiation phase was only by telephone and at the plaintiff's request"); *Classic Golf Co. v. Karsten Mfg. Co.*, 1986 WL 8953, at *1 (N.D. Ill. Aug. 8, 1986) (no jurisdiction where defendant's only connection with Illinois was that his lawyer made one phone call and sent two letters to plaintiff in Illinois regarding the patent infringement allegations). In relating these phone conversations, Mr. Leung omits to note that he is based in San Francisco, not Illinois. *See* Jeff Leung Bio, https://www.afslaw.com/attorneys/jeff-leung (*last visited* June 15, 2023). And Alipay MS's counsel was not located in Illinois during all but one of these phone conversations. Schwartz Decl. ¶¶ 3–4, 10, 12. Finally, during its communications with Vortex's counsel, Alipay MS's counsel expressly reserved its objection to personal jurisdiction. *See* Schwartz Decl. ¶¶ 9, 11.

Vortex further argues that Alipay MS's voluntary freeze of Defendants' accounts constitutes "continuous and active participation in this matter," thereby giving rise to personal jurisdiction. Mot. at 7. That is wrong. To be clear, Alipay MS never participated in this matter— it has not even appeared before this Court until the filing of this opposition brief. Moreover, Alipay

MS voluntarily froze the accounts not because it intended to waive its personal jurisdiction objection but because it respects intellectual property rights and can exercise its contractual right under its terms of service to freeze such accounts if it receives notice of infringement claims with adequate evidentiary support. *See* Ho Decl. ¶ 13.

Finally, Vortex's attempt to invoke this Court's inherent power to bind non-parties is a red herring. Mot. at 10. To bind a nonparty, the Court must first have personal jurisdiction over it. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[p]ersonal jurisdiction "goes to the court's power to exercise control over the parties"). Vortex's argument that, because the Court can bind a non-party, it must have personal jurisdiction over that non-party is a non-sequitur.

### III. Principles of International Comity Dictate Against Ordering Alipay MS to Turn Over Funds Located in Singapore Without Vortex's First Obtaining a Singapore Court's Order Recognizing and Enforcing this Court's Judgment

Principles of international comity dictate against ordering Alipay MS to turn over funds located in Singapore without Vortex first obtaining a Singapore court's order recognizing and enforcing this Court's judgment. "In accord with the principle of comity between sovereign nations, a district court should decline to exercise jurisdiction under certain circumstances in deference to the laws and interest; of another foreign country." *Basic v. Fitzroy Eng'g, Ltd*., 1997 WL 753336, at *8 (7th Cir. 1997). Most importantly, courts should consider if compliance with a court order will subject a foreign party to significant legal risks in the foreign country. *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 152 (S.D.N.Y. 2011); Restatement (Third) Foreign Relations Law § 441 (1987) ("In general, a state may not require a person (a) to do an act in another state that is prohibited by the law of that state or by the law of that state of which he is a national"); *see also United States v. First Nat'l Bank of Chi.*, 699 F.2d 341, 345 (7th Cir. 1983) (requiring courts to conduct a "sensitive balancing test of the competing interests" when a foreign party faces potential liability for compliance with a U.S. court order).

13

Here, principles of comity clearly dictate against ordering Alipay MS to turn over funds in accounts located in Singapore. First, Singapore has a strong interest in the disposition of assets held by Singapore companies like Alipay MS. *Cf. CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, 2013 WL 2661037, at *14 (S.D.N.Y. June 12, 2013) ("Relative to the United States, Singapore has an interest in enforcement of its bank laws to protect the privacy of its customers."). Second, Alipay MS would face significant legal risks in Singapore if required to turn over the funds Vortex seeks absent a Singapore court's order recognizing and enforcing this Court's judgment. Pillai Decl. ¶¶ 11–19. Third, procedures are available to Vortex in Singapore that, if followed, could allow recognition and enforcement of a U.S. judgment against Defendants' assets without the concomitant legal risk to Alipay MS. *Id.* ¶¶ 22–36. Vortex has not even attempted to go through such channels, and this Court should not permit it to circumvent that process, at the expense of international comity.

Vortex pays lip service to the international comity issue in its Motion and cites two inapposite out-of-circuit decisions. Mot. at 5 n.1. The first decision Vortex cites—*Gucci Am. v. Li*, 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011)—was subsequently vacated by the Second Circuit, partly because the trial court failed to conduct an international comity analysis. *Gucci Am., Inc. v. Li*, 769 F.3d 122, 138-140, 170 (2d Cir. 2014) (directing trial court to consider "whether proper application of the principles of comity demonstrates that it may exercise such jurisdiction" on remand). The second case—*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013)—is no more on point. The excerpt Vortex cites from *Licci* was about the analysis of traditional notions of "fair play and substantial justice" in assessing personal jurisdiction. *Id.* at 174. It has nothing to do with international comity analysis.

At bottom, this Court should not countenance Vortex's attempt to short-circuit the well-established procedures for enforcing a judgment against assets located abroad. If U.S. courts were to ignore principles of international comity and issue orders purporting to attach assets located abroad as Vortex asks this Court to do, "foreign courts might reciprocate, asserting jurisdiction over U.S. citizens based on our conduct at home – an equally alarming prospect." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 231 (4th Cir. 2019). What Vortex is asking this Court to do is no different than a Singaporean plaintiff asking a Singapore court to enforce a Singaporean judgment against a U.S. citizen by issuing an order to her bank in Chicago purporting to attach her accounts. Just as this Court would not tolerate such blatant disregard of the U.S. judicial system, it should not entertain Vortex's attempt to circumvent the Singaporean judicial system.

IV. **The Court Lacks Personal Jurisdiction Over Alipay US**

As a threshold matter, Alipay US is irrelevant to this proceeding because—as Vortex was advised—Alipay US does not hold or control any of the funds at issue. *See* Kister Decl. ¶ 7. As such, it should not have been brought into this proceeding in the first place. Moreover, the Court lacks personal jurisdiction over Alipay US. There is no general jurisdiction because Alipay US is neither incorporated nor headquartered in Illinois. *Id.* ¶ 3. There is also no specific jurisdiction because Vortex never established that Alipay US had any presence in Illinois, and more importantly, how such presence (if any) was connected to this proceeding.

## Conclusion

For the above-stated reasons, Alipay MS and Alipay US respectfully request that the Court deny the Motion and award Alipay US the fees and expenses that it incurred in responding to the Motion.

DATED: June 16, 2023     Respectfully submitted,

          By */s/ Andrew H. Schapiro*

          Andrew H. Schapiro
          QUINN EMANUEL URQUHART & SULLIVAN, LLP
          191 N. Wacker Drive, Suite 2700
          Chicago, Illinois 60606-1881
          (312) 705 7400 (phone)
          (312) 705 7401 (fax)
          andrewschapiro@quinnemanuel.com

          Carey R. Ramos*
          Jianjian Ye*
          QUINN EMANUEL URQUHART & SULLIVAN, LLP
          51 Madison Avenue
          22nd Floor
          New York, New York 10010
          careyramos@quinnemanuel.com
          jianjianye@quinnemanuel.com

          **Motion to Appear Pro Hac Vice Pending*