UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Vortex, Inc., *Plaintiff*, v. The Partnerships and Unincorporated Associations Identified on Schedule A, *Defendants*. | No. 22 CV 4189 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Vortex, Inc.'s motion for writ of execution [Dkt. 52], which asks the Court to compel nonparties Alipay Merchant Services Pte Ltd. ("Alipay MS") and Alipay US to turn over funds held in Alipay MS accounts. The first issue this motion raises is whether Vortex has made a *prima facie* showing that Alipay MS or Alipay US is subject to this Court's personal jurisdiction. [*See* Dkt. 77, 79.] Because Vortex has not made that showing, its motion is denied.

**I.  Background**

Vortex brought this suit against alleged trademark and copyright infringers; it secured a preliminary injunction freezing Defendants' assets and later a default judgment awarding Vortex $200,000 in damages from each Defendant. [Dkt. 39, 40, 47, 51.] The Court's Amended Judgment ordered third parties holding Defendants' assets to turn over those funds to Vortex. [Dkt. 51 ¶ 8.] Alipay MS, a Singaporean company, refused, arguing that Vortex should collect its judgment in a proceeding in Singapore. [Dkt. 60 at 1–2.] Because Alipay MS would not voluntarily release the frozen funds to Vortex, Vortex filed a motion for writ of execution, which it served on

1

Alipay MS and Alipay US, a Delaware corporation headquartered in California. [Dkt. 52; Dkt. 60 at 2.] The Alipay Entities[1] opposed the motion on several grounds, including that the Court lacks personal jurisdiction over them. Here, the Court takes up the issue of whether Vortex has met its initial burden of making a *prima facie* showing that personal jurisdiction is proper. [Dkt. 79.] *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

## II. Legal Standards

A plaintiff need not "alleg[e] personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The Alipay Entities are not parties, but all agree that the same principles that govern Rule 12(b)(2) motions apply here, where Vortex asks the Court to enforce its order against third parties. [Dkt. 78 at 2–3, 5–7.]

When evaluating a personal jurisdiction challenge, "the court must decide whether any material facts are in dispute. If so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged. Until such a hearing takes place, the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt*, 302 F.3d at 713 (citations omitted). Neither party requests an evidentiary hearing at

---

[1] The Court uses the same naming conventions it did previously. [*See* Dkt. 77 at 1 n.3.]

2

this stage, so Vortex need only establish a *prima facie* case that the Court has jurisdiction over Alipay MS and Alipay US. To determine if Vortex has met its burden, the Court takes Vortex's allegations as true unless refuted with affirmative evidence, such as affidavits, which Vortex must then dispute with evidence of its own. *Purdue*, 338 F.3d at 782–83. The Court then resolves evidentiary disputes in Vortex's favor. *Curry*, 949 F.3d at 393.

## III. Analysis

Personal jurisdiction comes in two varieties, general and specific, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021), but only specific jurisdiction is at issue here. [*See* Dkt. 60 at 6–7 (arguing that general jurisdiction is absent); Dkt. 71 (not disputing the point).] The Court can exercise specific jurisdiction over Alipay MS or Alipay US if:

> (1) [the entity] has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to [its] forum-related activities; and (3) [the] exercise of personal jurisdiction ... comport[s] with traditional notions of fair play and substantial justice.

*Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2020) (citation omitted).[2]

### A. Jurisdiction over "Alipay"

Vortex argues, and the Alipay Entities do not dispute, that "Alipay" consists of several affiliated companies. [Dkt. 71 at 3; *see, e.g.*, Dkt. 71-2 at 56 ("Alipay Services are provided by Alipay Singapore E-Commerce Private Limited and its affiliates

---

[2] The forum state's long-arm statute must also authorize jurisdiction, but Illinois's statute appears to extend to the constitutional limit, so the Court need only assess whether exercising personal jurisdiction comports with due process. *See Rogers*, 996 F.3d at 818.

3

(collectively, 'Alipay') ….").][3] Two such entities have been served with Vortex's motion, Alipay MS and Alipay US, but Vortex largely treats "Alipay" as a collective, encompassing Alipay MS, Alipay US, and other affiliates over which Vortex has not asked the Court to exercise personal jurisdiction. [*See, e.g.*, Dkt. 71 at 1 & n.1.]

Vortex suggests that the Court should look to "Alipay's" aggregate contacts to determine whether personal jurisdiction is proper. [Dkt. 52-1 at 8–9; Dkt. 71 at 6–7.] But Seventh Circuit precedent is clear that the Court must normally assess distinct entities' jurisdictional contacts independently, even if those entities are affiliates. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000) ("[W]here corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other."); *accord Purdue*, 338 F.3d at 784, 788 n.17. A subsidiary's contacts are not imputed to the parent unless the parent exercises so much control over the subsidiary that the subsidiary is, in effect, an alter ego of the parent. *Cent. States*, 230 F.3d at 943–45.[4]

Vortex fails to establish that the Court should depart from the ordinary rule here. It argues that, "[a]t a minimum, the[ ] commonly owned and managed Alipay entities operate jointly to facilitate the transfer of funds resulting from the sales of infringing products to Illinois consumers" [Dkt. 52-1 at 10], and that "'Alipay' consists

---

[3] Citations to page numbers of exhibits refer to electronic pagination.
[4] The Seventh Circuit has not explicitly addressed whether non-corporate business entities' jurisdictional contacts must be assessed separately, but the Court concludes that the same principle applies to other types of entities. *See Howell v. Bumble, Inc.*, 2023 WL 6126492, at *14 n.10 (N.D. Ill. Sept. 19, 2023) (analyzing this issue).

of commonly-owned and managed entities that jointly operate to facilitate payment processing" [Dkt. 71 at 2]. "Fundamentally," Vortex says, "Alipay may not hide behind its web of corporate entities to avoid personal jurisdiction" [Dkt. 52-1 at 12], but the cases it relies on concern imputing to a corporation the acts of its agents, not treating affiliated companies as one for jurisdictional purposes [*see* Dkt. 71 at 12]. The idea that the actions of agents can establish personal jurisdiction over the principal dates back to the birth of the minimum contacts test, *see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) (referencing "International Shoe's sales representatives, Ford's dealerships, [and] Coca–Cola's distributors"), but that is a separate question from whether one company's jurisdictional contacts can be imputed to another, *see Purdue*, 338 F.3d at 784, 788 n.17.

The Court need not decide whether the Alipay family exhibits a sufficient degree of corporate control to allow one entity's contacts to be imputed to another because Vortex has not asked the Court to enforce its motion against the parent company. Alipay MS and Alipay US have produced evidence that neither is the Alipay parent company and neither owns the other. [Dkt. 61 ¶¶ 4–6; Dkt. 62 ¶¶ 4–7.] Vortex has not offered evidence to refute this point—if anything, its evidence suggests that Alipay Singapore E-Commerce Private Limited may be the parent company. [*See* Dkt. 71-2 at 56.] Thus, Vortex has not created a dispute as to whether Alipay MS or Alipay US is the Alipay parent, *cf. Curry*, 949 F.3d at 393, and the Court considers Alipay MS's and Alipay US's contacts without taking a position about other related entities.

5

### B. Jurisdiction over Alipay MS

Alipay MS has produced evidence that it lacks sufficient contacts with Illinois to make exercising personal jurisdiction over it inconsistent with due process. Through a declaration by its senior legal counsel, Alipay MS denies owning, operating, or controlling Alibaba.com or AliExpress.com; operating the Alipay app; having real property, personal property, officers, directors, employees, bank accounts, a place of business, or a registered agent in Illinois; paying income or property taxes in Illinois; and being registered to do business in Illinois. [Dkt. 61-1 ¶¶ 5–6, 8–12.] Alipay MS also states that the funds Vortex is trying to collect are in accounts held in Singapore. [*Id.* ¶ 7.] Vortex largely does not attempt to dispute this evidence.[5] Instead, Vortex argues that the Court can exercise personal jurisdiction over Alipay MS for several other reasons. As explained below, each of Vortex's arguments fails.

#### 1. Extensive Contacts

Vortex argues that personal jurisdiction over Alipay MS is satisfied because "Alipay" has extensive contacts with the United States and Illinois. [Dkt. 52-1 at 8–9; Dkt. 71 at 6–7.] As the Court has explained above, however, it must determine each entity's jurisdictional contacts independently. Vortex's arguments that Alipay as a collective has sufficient minimum contacts are unavailing because Vortex lacks evidence that Alipay MS possesses the jurisdictional contacts of all Alipay affiliates.

---

[5] Vortex points out that Alipay MS does not deny that it maintains accounts in Illinois in so many words [Dkt. 71 at 7 (citing Dkt. 61 ¶ 11)], but by denying that Alipay MS holds property in Illinois, the declaration supports the assertion that Alipay MS does not maintain customers' accounts in Illinois, as do the terms and conditions that govern the services Alipay MS provides to clients. [*See* Dkt. 61 ¶ 7; Dkt. 61-1.]

6

[*Compare, e.g.*, Dkt. 52-1 at 8–9 (asserting that "[b]ased on Alipay's own information, it is clear that Alipay's contacts with the United States are extensive," and supporting that assertion with an article that discusses the Alipay e-wallet application, which is operated by Ant Group, a Chinese company), *with* Dkt. 61 ¶ 6 ("Alipay MS does not operate 'Alipay'—the electronic payment application that is used by Chinese citizens.").] While Vortex might be able to take advantage of "Alipay's" collective contacts if it attempted to compel an Alipay parent company to turn over the funds and demonstrated that subsidiaries' contacts can be imputed to the parent, Vortex cannot rely on these contacts to establish personal jurisdiction over Alipay MS.

### 2. Offers to Sell Products in Illinois

Next, Vortex contends that the Court has personal jurisdiction over Alipay MS based on Defendants' offers to sell products to people in Illinois via AliExpress.com. [Dkt. 71 at 4–5.] Vortex states,

> For each of the Defendants' accounts frozen by Alipay, Vortex's Complaint provided evidence of offers to sell and ship Defendants' counterfeit products to Illinois. … In order for consumers' payments to reach the counterfeiters' Alipay accounts, Alipay [MS] is required to process (i.e., direct, move, and oversee) sums paid to purchase and ship Defendants' counterfeit products.

[*Id.*] These contacts, Vortex argues, are sufficient to permit the Court to exercise personal jurisdiction over Alipay MS. The Court disagrees.

If there were evidence that Alipay MS acted as an intermediary for transfers of funds between Defendants and Illinois customers, the Court would have no trouble concluding that Vortex made out a *prima facie* case of personal jurisdiction over Alipay MS. In that case, Alipay MS would have chosen to hold itself out as a company

7

that would maintain accounts for sellers who sold products through the Alipay app, including customers in the United States. [*See* Dkt. 71-2 at 56 ("Alipay Services are provided by Alipay Singapore E-Commerce Private Limited and its affiliates (collectively, 'Alipay') to receive payment of funds in support of Sites for the Online Transactions."), 78 (appointing Alipay US as the agent of sellers for sales based in the United States); *see also* Dkt. 61-1 at 12 (indicating that Alipay MS is an affiliate of Alipay Singapore E-Commerce Private Limited).] Any payments from Illinois buyers to Defendants' Alipay MS accounts would be the result of a deliberate connection, not "a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person.'" *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022). Alipay MS would have control over these contacts—it could choose not to offer its services to entities selling in Illinois—and should not be surprised if its clients chose to sell there and Alipay MS was haled into court as a result. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

But Vortex does not have evidence that Defendants *sold* infringing products to Illinois customers using Alipay; rather, Vortex's evidence is that Defendants *offered to sell* products in Illinois through internet marketplaces. [Dkt. 71 at 4–5.][6] This is a

---

[6] With the recent joint status report, Vortex included exhibits including a report that Vortex contends "reflects actual sales and shipment to Illinois of counterfeit … products from AliExpress.com" by Defendants holding accounts with Alipay MS. [Dkt. 78 at 4–5; *see* Dkt. 78-1.] The Alipay Entities object on several grounds, including that Vortex waived its ability to rely on this report by failing to produce it earlier. [Dkt. 78 at 12–17.] The Court agrees. Vortex has had access to this report since 2022, but it did not rely on it to establish sales to Illinois customers in its opening brief or reply brief. *See, e.g., Newbold v. Wis. State Pub. Def.*, 310 F.3d 1013, 1017 (7th Cir. 2002) (failing to develop argument in briefing waived it); *Weiss v. Coca-Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993) (noting that the district court properly enforced the waiver of an argument made for the first time in a reply brief).

meaningful distinction. The Seventh Circuit has held that offering to sell products on interactive websites alone is not enough to support personal jurisdiction. *Compare, e.g.*, *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." (citations omitted)), *with, e.g.*, *uBID*, 623 F.3d at 427–29 (7th Cir. 2010) (extensive marketing and sales created sufficient contacts). Offers to sell products may be sufficient if they are tortious, *see, e.g.*, *The Chi. Athenaeum: The Ctr. for Architecture, Art, & Urb. Stud. v. Int'l Awards, Inc.*, 2019 WL 10734740, at *4 (N.D. Ill. Jan. 16, 2019) (collecting cases), but Alipay MS is one step removed from any offer to sell infringing products here because Defendants, not Alipay MS, made those offers.[7] Even if such offers to sell support personal jurisdiction against the offerors, personal jurisdiction cannot be based on "the unilateral activity of another party or a third person." *NBA Props.*, 46 F.4th at 624 (quoting *Burger King*, 471 U.S. at 475). Without evidence that Alipay MS chose to do business with Defendants knowing that doing so meant targeting the Illinois market, the Court holds that Defendants' offers to sell products via the internet, including in Illinois, is insufficient to establish personal jurisdiction over Alipay MS.

---

[7] For these reasons, the cases Vortex relies on where the party against which the court exercised jurisdiction had bank accounts in the jurisdiction are inapposite. Vortex does not have evidence that Alipay MS maintained accounts in Illinois. *Cf. SEC v. PlexCorps*, 2018 WL 4299983, at *10 (E.D.N.Y. Aug. 9, 2018) ("The Individual Defendants' repeated use of United States–based payment servicers is … significant."); *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (finding jurisdiction under the state long-arm statute where a defendant foreign bank maintained a correspondent account in the forum state).

9

### 3. Contributory Infringement

Last, Vortex argues that Alipay MS is subject to personal jurisdiction in this Court because it is a contributory infringer. In Vortex's view, the Court can exercise personal jurisdiction over Alipay MS because it "provid[ed] Defendants payment services, which enabled them to sell products in the United States, including in Illinois, that infringed Vortex's intellectual property and to receive payments originating in the United States from United States residents, which inured to the profitable benefit of Alipay." [Dkt. 52-1 at 8 (citation omitted).] The Court does not doubt that this is a valid basis for exercising personal jurisdiction over a nonparty,[8] but more is required for contributory infringement than simply facilitating another's infringement. The Seventh Circuit has analogized contributory infringement to aiding and abetting and endorsed a "succinct definition of contributory infringement …: personal conduct that encourages or assists the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755, 757 (7th Cir. 2012) (cleaned up).

---

[8] As Vortex points out, Federal Rule of Civil Procedure 65(d)(2)(C) provides that an injunction binds "persons who are in active concert or participation with" parties or their agents, and the Supreme Court has described Rule 65's "essence" as that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13–14 (1945). [*See* Dkt. 52-1 at 9–10.] The Court notes the possibility that this understanding of aiding and abetting might result in a third party being subject to otherwise-improper personal jurisdiction if an original defendant fails to object to personal jurisdiction being exercised over it. If the defendant fails to appear, a court may find that jurisdiction is proper and enter a default judgment, which would also subject aiders and abettors to personal jurisdiction upon a showing of aiding and abetting, *not* an independent personal jurisdiction analysis. The Court is not concerned with this possibility. In criminal law, the conduct of principals is imputed to aiders and abettors, *see, e.g.*, *United States v. Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023), and the Court sees no reason why the same would not be true in this context. If one is worried about being hailed into a far-flung court because a fellow tortfeasor fails to raise a jurisdictional objection, the solution is not to aid and abet tortious conduct.

10

Vortex does not argue that Alipay MS encouraged or assisted Defendants' infringement, and even if the Court inferred that Alipay MS was aware that some of its accounts were being used to facilitate sales of infringing products, that would not be enough to establish that Alipay MS is a contributory infringer. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 654 (7th Cir. 2003) (explaining that "the owner of a dance hall who hires dance bands that sometimes play copyrighted music without authorization" is not a contributory infringer because he does not "benefit[ ] directly from the infringement that he encourages").[9] If, however, Alipay MS continued to offer services to Defendants and profit from their sales via the Alipay app, Alipay MS would be assisting the infringement. *Flava Works*, 689 F.3d at 757; *see David Berg & Co. v. Gatto Int'l Trading Co., Inc.*, 884 F.2d 306, 311 (7th Cir. 1989) ("The determination of contributory infringement depends upon a defendant's intent and its knowledge of the wrongful activities of its distributors. … If a distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement the distributor is contributorily responsible." (cleaned up)). Vortex has

---

[9] Vortex argues that because "Alipay" knows that, "[y]ear after year, Aliexpress makes the U.S. government's list of Notorious Markets for Counterfeiting and Piracy" but continues to "[choose] to profit from each illegal sale via its processing fees and facilitate the movement of Defendants' unlawful profits in and out of Defendants' Alipay accounts," "Alipay" is subject to the Court's personal jurisdiction. [Dkt. 71 at 1.] But under *Aimster*, Alipay MS knowing that some Alipay sellers commit infringement is insufficient to show that it is a contributory infringer; it would need to be aware of and assist or encourage Defendants' infringement. 334 F.3d at 654; *see Flava Works*, 689 F.3d at 757.

11

produced no such evidence, though. Indeed, the evidence suggests that Alipay MS assisted in the enforcement of Vortex's copyright by freezing Defendants' accounts.[10]

Without evidence that it engaged in "personal conduct that encourage[d] or assist[d] the infringement" at issue here, *see Flava Works*, 689 F.3d at 757, Alipay MS cannot be subject to personal jurisdiction as a contributory infringer.[11]

\* \* \*

Vortex has failed to come forward with evidence to support any of its theories for exercising personal jurisdiction over Alipay MS. Without evidence, Vortex has

---

[10] Alipay MS was not compelled to freeze Defendants' accounts because the temporary restraining order ("TRO") lapsed before it would have been required to act if it was bound by the TRO. [*See* Dkt. 60 at 12–13; Dkt. 64-1 at 3–4.]

[11] The cases Vortex cites do not support the opposite conclusion. Vortex suggests that Alipay MS could be found to be a contributory infringer simply "by providing Defendants payment services, which enabled them to sell products in the United States, including in Illinois, that infringed Vortex's intellectual property and to receive payments originating in the United States from United States residents, which inured to the profitable benefit of Alipay." [Dkt. 52-1 at 8 (citing *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 253 (S.D.N.Y. 2010)).] But the cited portion of *Frontline* concerned the merits of a contributory infringement claim under a "control and knowledge" theory, 721 F. Supp. 2d at 253, not jurisdictional contacts, which the court found satisfied because the defendants maintained websites accessible in the forum, did business with merchants selling in the forum, and had clients in the forum, *id.* at 245. Vortex has offered no evidence to suggest that Alipay MS does any of these things in Illinois. Alipay MS's services may have been an "essential factor" in Defendants' infringement scheme, but that fact alone doesn't establish jurisdiction. [*Contra* Dkt. 71 at 5.]

Vortex cites *Alibaba Group Holding Limited v. Alibabacoin Foundation*, 2018 WL 5118638, at \*4 (S.D.N.Y. Oct. 22, 2018), for the proposition that because Alipay MS and its affiliates "operate jointly to facilitate the transfer of funds resulting from the sales of infringing products to Illinois consumers, … personal jurisdiction [is] proper here." [Dkt. 52-1 at 10; *see also* Dkt. 71 at 7–8 (noting that Alipay MS does not dispute that it uses U.S. accounts to facilitate transfers from U.S. customers to its accounts in Singapore).] But *Alibaba Group* involved defendants who actually sold an allegedly infringing product to a customer in the forum. 2018 WL 5118538, at \*3 ("Defendants nowhere dispute that Alibaba has presented evidence that at least one New York resident has purchased AlibabaCoin on at least three occasions."). Here, by contrast, Vortex asks the Court to exercise personal jurisdiction over a company with which infringing Defendants do business. Without a showing that Alipay MS is a contributory infringer or otherwise has sufficient jurisdictional contacts, the Court cannot exercise personal jurisdiction over Alipay MS.

failed to create a dispute about whether personal jurisdiction is proper, so it has not shown a *prima facie* case that the Court can exercise jurisdiction over Alipay MS.

### C. Jurisdiction over Alipay US

The Court next addresses whether Vortex has made a *prima facie* showing that personal jurisdiction is proper over Alipay US. It has not. Much of the analysis regarding Alipay MS applies with equal or greater force to Alipay US. Alipay US has presented evidence that it is not the Alipay parent company, so Vortex cannot establish that personal jurisdiction exists by pointing to "Alipay's" collective contacts. [Dkt. 62 ¶¶ 4–7.] Further, because Vortex does not have evidence that Alipay US encouraged or assisted the infringement, the Court cannot exercise personal jurisdiction over Alipay US based on contributory infringement. *See Flava Works*, 689 F.3d at 757. Indeed, from one perspective, Alipay US's jurisdictional contacts are more attenuated than Alipay MS's because it does not hold Defendants' funds.

The case for exercising jurisdiction over Alipay US is stronger than for Alipay MS in one way, however. The Alipay services agreement provides that "for Buyers located in the United States or Buyers making payments via U.S. credit cards, debit cards or bank accounts, Alipay US is appointed as agent of Seller to receive Purchase Payments authorized by such Buyers." [Dkt. 71-2 at 78.] Thus, Alipay US is tied directly to every purchase made by U.S. customers through the Alipay app. Even so, these contacts are insufficient to permit the Court to exercise specific jurisdiction over Alipay US because, as discussed above, there is no evidence that Defendants sold counterfeit products in Illinois, as opposed to offering to sell such products. The mere offer to sell by Defendants does not confer personal jurisdiction over a third party

13

that would have been involved in a transaction if one had occurred. *See NBA Props.*, 46 F.4th at 624. Nor does the likelihood—presumably approaching a certainty—that Alipay US processed transactions by Illinois buyers for other Alipay users establish personal jurisdiction in this suit because the contacts with the forum state must arise out of or relate to Alipay US's forum-related activities. *Rogers*, 996 F.3d at 819. Thus, the Court cannot exercise personal jurisdiction over Alipay US.

## IV. Conclusion

For the foregoing reasons, Vortex has failed to make a *prima facie* case that Alipay MS or Alipay US is subject to personal jurisdiction in this Court. Therefore, the motion for a writ of execution [Dkt. 52] is denied.

Enter: 21-cv-4189  
Date: November 8, 2023

_____  
Lindsay C. Jenkins  
United States District Judge